# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN WESLEY SLAGLE,

               Petitioner,      :      Case No. 3:12-cv-367

    - vs -                                 District Judge Walter Herbert Rice
                                        Magistrate Judge Michael R. Merz

MICHELE MILLER, WARDEN,
  Belmont Correctional Institution,

                                     :

               Respondent.

## REPORT AND RECOMMENDATIONS

This is an action for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner John Wesley Slagle is confined in Respondent's custody as a result of a conviction in the Montgomery County Common Pleas Court. He pleads the following Grounds for Relief:

> **Ground One:** Petitioner's right to due process of law and equal protection thereof was denied by a trial and finding of guilt solely on an audio-visual record, which trial method was improper, impermissible and illegal, pursuant to Ohio law. As a consequence of the Court of Common Pleas, Montgomery County, Ohio choosing to follow the recommendation of this Court, Petitioner herein was denied due process of law and the equal protection thereof, being the only person ever convicted of a crime in the State of Ohio, by an admittedly improper and therefor [sic] illegal process.
>
> **Supporting Facts**: A prior Petition for Habeas Corpus was filed with this Court, resulting in the issuance of a Conditional Writ of Habeas Corpus being the result of which was that the Common Pleas Court of Montgomery County, Ohio, followed the decision and proposed remedy issued by this Court; however, the Second District Court of Appeals, Ohio, found that the decision and proposed remedy issued by this Court was illegal and impermissible under Ohio law; the Second District Court of

1

>Appeals then stated that it did not have jurisdiction to overturn the decision and proposed remedy due to the doctrine of collateral estoppel. An appeal was then filed with the Ohio Supreme Court, and the Ohio Supreme Court declined jurisdiction and dismissed said appeal filed therein.
>
>**Ground Two:** Petitioner's right to due process of law and the equal protection thereof was denied by a finding of guilt of theft based solely on a contractual agreement in violation of Ohio law.
>
>**Supporting Facts:** From the very beginning, Petitioner has maintained that this entire situation is a civil and not a criminal matter.

(Petition, Doc. No. 1; Motion to Amend, Doc. No. 6.)

### First Ground for Relief:  Verdict Based on Videotape Record

In his First Ground for Relief, Slagle contends his conviction by one Common Pleas judge on the basis of a video record of his bench trial before another judge who died before rendering a verdict violates both the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

**Equal Protection**

The Warden asserts that the equal protection branch of this claim is procedurally defaulted because it was never fairly presented to the Ohio courts (Return of Writ, Doc. No. 12, PageID 984).

The equal protection branch of the claim, as stated in the First Ground for Relief, is that Petitioner is "the only person ever convicted of a crime in the State of Ohio, by an admittedly

improper and therefor [sic] illegal process." (Motion to Amend, doc. No. 6, PageID 96-97.)  As proof that he fairly presented this claim to the Ohio courts, Slagle cites a number of parts of the state court record.

First of all Slagle quotes his first issue on appeal:  "The Trial Court's procedure in granting the prosecution's motion for mistrial denied the Defendant a fair Trial and due process under the Fifth Amendment to the U.S. Constitution. . . .  Said issue also raised double jeopardy which is also a Federal issue."  (Reply, Doc. No. 14, PageID 998-999).  Double Jeopardy is indeed an issue under the Fifth Amendment, but the equal protection and due process clauses are, of course, found in the Fourteenth Amendment.

Slagle litigated his Double Jeopardy claim in this Court in a previous habeas corpus case, *Slagle v. Court of Common Pleas,* Case No. 3:08-cv-146.  However, pleading a Fifth Amendment Double Jeopardy claim does not fairly present an Equal Protection claim.  Slagle points to no place in the state court record where he argued that his being the only person who has ever been convicted on a video record denied him equal protection of the laws.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law"

does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

Slagle presented a Double Jeopardy claim, not an Equal Protection claim to the Ohio courts. Therefore his argument that he made a fair presentation of his Equal Protection claim is without merit.

Slagle's next argument is that the Ohio Supreme Court declined jurisdiction over his attempted appeal from the court of appeals' decision by finding that the appeal did not present a substantial constitutional question. He concludes "[u]nless a constitutional issue was presented to it, the Ohio Supreme Court could not have made such a determination." (Reply, Doc. No. 14, PageID 998.) However, Slagle's appeal to the Ohio Supreme Court mentions nothing about equal protection. His propositions of law on appeal were:

> 1. A successor judge in a bench trial may not render a verdict solely upon a review of an audio visual recording of the trial.

4

> 2. The State of Ohio and a common pleas court therein are separate and distinct entities.
>
> 3. The breach of an employment agreement between an attorney and a law firm may not form the basis of a criminal prosecution.
>
> 4. The record of a sentencing hearing must reflect that all requisite matters regarding sentencing must have been followed by the trial court.
>
> 5. It is the burden of the State to produce probative evidence of an amount claimed due as "restitution" and as consequence, provide a defendant with credit for all sums paid.

(State Court Record, Doc. No. 11, PageID 527.)  Slagle argues "[t]he Ohio Supreme Court then declined jurisdiction on the basis that, in its opinion, there was no substantial constitutional question knowing full well what had been appealed to the lower court, and then, to it."  (Reply, Doc. No. 14, PageID 999.)  A decision of the Ohio Supreme Court to decline jurisdiction and dismiss an appeal for want of a substantial constitutional question is not a decision on the merits of any question, so the form entry by which the Ohio Supreme Court decided not to take jurisdiction does not show it considered any question at all.  See Ohio S. Ct. Prac. R. 7.08(B).  But in any event, Slagle never presented an Equal Protection claim to the court of appeals.

Slagle cites various pages of the Hertz and Liebman treatise[1] on habeas corpus for the doctrine on what needs to be done to satisfy the exhaustion doctrine in habeas corpus (Reply, Doc. No. 14, PageID 1000).  It is not exhaustion, but procedural default which is at issue here.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred

---
[1] Hertz & Liebman, Federal Habeas Corpus Practice and Procedure, 6th edition.

5

> unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. An unexhausted claim is one which a petitioner can still present to the state courts; a procedurally defaulted claim is one which the state courts have refused to consider on the merits or which they would now refuse to hear because of some regularly-enforced procedural bar.

Slagle never raised an Equal Protection claim in the Ohio courts and does not now have any method of doing so. The Equal Protection branch of Slagle's First Ground for Relief is barred by his failure to present it to the state courts when he had the opportunity to do so.

Slagle suggests at the end of his Reply that he should be given a stay and permitted to reopen the state court proceedings (Reply, Doc. No. 996). But the time for reopening the appeal has long since passed and the time limits on App. R. 26(B) motions are regularly enforced by the Ohio courts of appeals. The timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. Aug. 24,

6

2009). Since 1996, "Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B)," and "'the time constraints of Rule 26(B) [have been] firmly established and regularly followed.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012), *quoting Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010) (*quoting Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)). Thus, Rule 26(B) is an adequate and independent ground on which to find procedural default. *Id.*

If this Court reaches the merits of the Equal Protection claim despite the procedural default, it should also dismiss the claim with prejudice. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Id.; Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

It is true that Slagle's situation is apparently the first time that it happened in Ohio that a felony case had been tried to the bench and the judge had died before rendering a verdict and there was a complete video record of the trial. The Montgomery County Common Pleas Court was an early adopter of creating the record by video recording and the circumstance of a judicial death before verdict must be quite rare. Thus the State did not do anything intentional to create the situation in which Slagle found himself, except making a video record, which it does for everyone.

7

Once Judge Davis died, it was Slagle himself who proposed that the case be decided on the record already created. Thus if there were constitutional error in proceeding in that way, it would be invited error. After the Second District Court of Appeals decision in this case, assuming their decision becomes precedential, no one else will ever have his or her case decided the way Slagle's was decided, but that is not the result of any invidious discrimination against him.

**Due Process**

Although the Due Process branch of the First Ground for Relief was also arguably not fairly presented, the Warden does not claim a procedural default. Instead, the Warden defends the Due Process claim on the merits, arguing Slagle has not shown the decision of the Ohio Court of Appeals upholding his conviction is contrary to or an unreasonable application of clearly established Supreme Court precedent (Return of Writ, Doc. 12, PageID 985).

As the Return of Writ notes, Slagle sued in habeas corpus in this Court to prevent his retrial on Double Jeopardy grounds after Judge Davis died and Judge Kessler granted a mistrial. He argued that there was no manifest necessity for a mistrial because he could have been tried on the video record, an argument he had previously made to the Common Pleas Court.

On recommendation of this Magistrate Judge and over Slagle's objection that the writ should be absolute, this Court granted him a conditional writ, ruling that he should be discharged unless the Common Pleas Judge who was assigned the case after Judge Davis' death decided the case upon the video record already created. *Slagle v. Court of Common Pleas,* 2009 U.S. Dist.

8

LEXIS 84008 (S.D. Ohio 2009). Slagle appealed but the Sixth Circuit affirmed. *Slagle v. Court of Common Pleas*, 2010 U.S. App. LEXIS 27703 (6th Cir. 2010).

Having been convicted by the successor judge on the video record, Slagle appealed to the Ohio Court of Appeals for the Second District. Although that court concluded, as a matter of first impression, that conviction by a successor judge on a video record was not proper under Ohio law, it held Slagle was barred by collateral estoppel from relitigating that issue. Judge Fain wrote for the court:

> **[\*P41]** Although we disagree with the decision of the federal district court in Slagle's habeas corpus proceeding, the doctrine of collateral estoppel precludes relitigation of that issue. That doctrine was explained by the Supreme Court of Ohio in *Whitehead v. General Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969), as follows:
>
>> The second aspect of the doctrine of res judicata is 'collateral estoppel.' While the merger and bar aspects of res judicata have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action.
>
> Restatement of the Law, Judgments, Section 45, comment (c) and Section 68(2); *Cromwell v. County of Sac* (1876), 94 U.S. 351, 24 L.Ed. 195. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.
>
> **[\*P42]** The federal district court unquestionably had jurisdiction; Slagle actually invoked that jurisdiction. Although the parties adverse to Slagle in the two actions are nominally different — the Montgomery Common Pleas Court in the federal action, the State of Ohio in the case before us — we agree with the State that the State of Ohio is the real party in interest in both cases. The requirement of mutuality of parties, which Slagle argues is not satisfied here, is satisfied where all of the parties to the present

proceeding were bound by the prior judgment. *North Olmstead v. Eliza Jennings, Inc*., 91 Ohio App.3d 173, 184, 631 N.E.2d 1130 (8th Dist. 1993). The State was surely bound by the federal court order in Slagle's habeas corpus proceeding; had the common pleas court failed to render a verdict in the manner prescribed by, or within the time limit prescribed by, the federal order, the State could not have continued to incarcerate Slagle in defiance of the federal court's order.

[*P43] In adopting the reasoning set forth in *State v. Lemmer* (Minn. 2007), 736 N.W.2d 650, the Supreme Court of Ohio has held that: " * * * the dispositive issue is whether the party sought to be bound by the previous determination 'had a controlling participation in the first action.'" *State ex rel. Estate of Miles v. Village of Piketon*, 121 Ohio St.3d 231, 2009 Ohio 786, 903 N.E.2d 311, at ¶ 29, quoting from *Lemmer*. Slagle clearly had a "controlling participation" in the federal habeas corpus action. He was the petitioner, and he obtained relief, if not the precise relief he was requesting.

[*P44] In the federal habeas corpus proceeding, Slagle took the position that there was no manifest necessity for a mistrial upon the death of Judge Davis, because the trial court had the alternative of submitting the case to a successor judge, to render a verdict after reviewing the audiovisual record of the trial. Presumably, Slagle also took the position he had taken when he moved for dismissal of the indictment on double-jeopardy grounds — that a mistrial having been declared, albeit improperly, it was now too late to afford him any remedy short of dismissal of the indictment.

[*P45] The federal court agreed with Slagle in part; and disagreed with him in part. It agreed with Slagle that a mistrial ought not to have been declared; but it disagreed with him that it was now too late to provide a remedy less than outright dismissal of the indictment. It issued a conditional writ of habeas corpus ordering that: "Slagle shall be discharged from further responding to the Indictment unless the Common Pleas Court renders a decision on the video record already created not later than 180 days from the date judgment is entered in this matter." *Slagle v. Court of Common Pleas of Montgomery County, Ohio*, 2009 U.S. Dist. LEXIS 84012, 2009 WL 2982880 at *1. Having invoked the jurisdiction of the federal court to obtain that result, Slagle is now bound by it.

[*P46] Slagle argues that the federal court's holding that the state trial court could proceed by having a successor judge render a

verdict audiovisual record of the completed bench trial was not necessary to its judgment, so that the doctrine of collateral estoppel does not apply. This argument is difficult for us to understand. The judgment of the federal district court was that the state trial court must either proceed in the specified manner, or Slagle must be discharged under double-jeopardy grounds. Essential to the federal court's holding that double jeopardy would apply was its conclusion that the mistrial declared by the state trial court was not necessary, because the alternative procedure was available.

**[\*P47]** Thus, even though we disagree that a successor judge in a bench trial may properly, under Ohio law, render a verdict based solely upon review of the audiovisual record of the trial, for the reasons set forth in Part III-A, above, the federal court so held, and the doctrine of collateral estoppel precludes relitigation of that issue. Likewise, the doctrine of collateral estoppel precludes relitigation of the holding of the federal court, which is at least implicit in its order, that for the trial court to follow the procedure set forth in the federal court's order does not violate the Double Jeopardy clause.

**[\*P48]** Slagle's First Assignment of Error is overruled.

*State v. Slagle*, 2012 Ohio App. LEXIS 1384 at \*16-21 (2nd Dist  2012).

In his Reply, Slagle makes no argument and cites no authority to shows that this ruling is contrary to or an unreasonable application of clearly established Supreme Court precedent, either on the collateral estoppel issue or on the question whether it is constitutional to try a person on a video record created before a deceased judge.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Therefore the Due Process prong of the First Ground for Relief should be dismissed

11

on the merits.

## Ground Two:  No Criminal Conduct Shown

In his Second Ground for Relief, Slagle argues that his conduct with respect to the funds he was convicted of stealing was at most a breach of contract and not criminal behavior.  Slagle raised this claim as his Second Assignment of Error on direct appeal and the court of appeals held:

> [*P7] Pickrel, Schaeffer, and Ebeling (PS&E) is a law firm operated as a professional corporation, located in Dayton. It is managed by officers selected by its shareholders.
>
> [*P8] In 1986, Slagle was hired by PS&E as a litigator. In the early 1990's, he became a shareholder. All attorneys at PS&E, including shareholders, enter into written employment contracts that regulate their conduct. Slagle executed written employment contracts for the years he worked at PS&E.
>
> [*P9] Slagle's contracts of employment with PS&E included the following provisions: (1) all attorneys were to devote full time and best efforts in the practice of law exclusively for the firm; (2) all fees received from the practice of law were to be turned over to the firm; (3) all clients were clients of the firm, not of the individual attorney; (4) all attorneys were to keep a daily record of their work for the firm, both billable and non-billable, in the form and manner designated by the firm; and (5) all client fees belonged to the firm.
>
> [*P10] PS&E's non-shareholder attorneys received salaries for their services. Its shareholder attorneys received percentages of the firm's net profits, determined by a compensation committee and subject to shareholder approval, based on the shareholder's contribution to management, billing responsibility, gross fees, and hours worked.  Shareholders were paid during the year with draws against the year-end net profits.
>
> [*P11] Customarily, an attorney receiving a settlement check would deposit that check into the firm's trust account. After payments out of the trust account for expenses, to clients, and to

other parties entitled to payment, a separate check would be paid out of the trust account to the firm for attorney fees. PS&E's attorneys were not permitted to individually endorse a check, or to receive a check from a client to the attorney, individually, as payment of an attorney fee.

[*P12] Between February 1, 1999, and July 13, 2001, Slagle received attorney fees for work he performed while employed at PS&E, but pocketed the moneys himself rather than depositing them into the firm trust account as required by his contract with PS&E.

[*P13] Slagle concealed his theft by falsifying PS&E's billing memoranda.  The results of his falsifications were that anyone reviewing the billing memoranda would see relatively small amounts of unbilled time in cases that appeared to be unresolved. But in reality, these cases had been settled, sometimes years earlier, and Slagle had received attorney fees far in excess of the unbilled time listed in the memoranda.

[*P14] In one case, in which Slagle worked as co-counsel with another local attorney not affiliated with PS&E, Slagle received $100,000 as his share of the attorney fees from the other attorney's trust account, but in multiple checks instead of one check. Slagle deposited some of these checks into his own personal account, and others he caused to be deposited into PS&E's trust account, altering each check in the process. In this way, he was able to minimize the number of client files showing unbilled time.

[*P15] In another case, Slagle used this same attorney's trust account as a conduit into which to deposit fees from a case that had been referred to him by yet another non-PS&E lawyer. Again, Slagle deposited some of the multiple checks written out of this trust account into his own personal account, and caused others to be paid into PS&E's trust account, altering them to facilitate doing so. When the attorney who had referred the case to Slagle inquired as to when she might expect to receive her share of the settlement, Slagle lied and told her that the case had not yet settled.

[*P16] In other cases, Slagle endorsed settlement checks over to clients, and then had the client write a personal check back to him to pay the attorney fees. In one case, Slagle had the client's father write Slagle a check personally for the attorney fees.

[*P17] Slagle was able to avoid detection of his thefts until April 2001. When PS&E finally discovered Slagle's thefts and

> confronted him, he resigned from the firm. Both before and after Slagle's resignation from the firm, PS&E attempted multiple times to obtain the information from Slagle or his attorney that would permit PS&E to compute how much Slagle had stolen from the firm. Slagle either ignored these requests or avoided them by lying. In one case, Slagle responded that although he had received a settlement check, he could not disburse it, because the client was accusing him of malpractice. This was a lie.
>
> [*P18] After unsuccessful negotiations between Slagle and PS&E, Slagle did return about $159,000 to the firm. But this was far less than the total of the amounts of fees he had stolen from the firm.

*State v. Slagle,* 2012 Ohio App. LEXIS 1384, *3-7 (2nd Dist. 2012).

This Ground for Relief is also without merit.

To the extent this Ground raises a question of Ohio law – whether the facts proved are sufficient to constitute a crime under Ohio law – it does not state a claim upon which relief can be granted because that is question of Ohio, not federal constitutional, law. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

If instead Slagle is here claiming that there was insufficient evidence upon which to convict, that is a federal constitutional claim under *Jackson v. Virginia*, 443 U.S. 307 (1979). However, the evidence recited by the court of appeals quoted above is plainly sufficient to satisfy the *Jackson* standard.

To the extent Slagle attempts to make an equal protection claim in Ground Two, it is

14

procedurally defaulted on the same basis as the equal protection prong of the First Ground. And in any event it is without merit: Slagle has not even argued that there is any other person who, upon similar facts, was permitted by the Montgomery County Prosecutor, the relevant state actor in this case, to have the matter resolved civilly.

## Other Issues

At the outset of his Reply, Slagle claims he "waived his Constitutional right to a jury trial in favor of Judge Davis of the Montgomery County Common Pleas Court. At no time did Petitioner agree to have any other judge whatsoever hear and determine Petitioner's case." (Reply, Doc. No. 14, PageID 997.) This claim misunderstand the effect of waiving a jury trial. While it may very well have been a strategic decision to enter the waiver because the case was then assigned to Judge Davis, the waiver was not legally judge-specific. Provided the jury waiver was knowing, intentional, and voluntary, it would have been effective if, say, Judge Davis had had a disabling stroke before trial or found facts which required him to disqualify himself.

Secondly, if Slagle believed his waiver was judge-specific, he could have acquiesced in Judge Kessler's declaration of a mistrial. It was Slagle's own suggestion that the record be reviewed by another judge in order to avoid a mistrial.

Slagle's suggestion that Judge McGhee should have known the suggested procedure was illegal makes no sense: no Ohio court had ever declared it improper until the Second District did on appeal in this case. And the suggestion that some other judge should have been assigned the case because Judge McGhee had been a prosecutor amounts to an argument that former

15

prosecutors are per se disqualified in criminal cases.

Slagel has certainly not shown that his jury waiver was unconstitutional or Judge McGhee was disqualified.  He arguments on these points are not entitled to any weight.

## Conclusion

It is respectfully recommended on the basis of the foregoing analysis that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify that any appeal would not be taken in objective good faith and should not proceed *in forma pauperis*.

June 24, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).