# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN WESLEY SLAGLE,

        Petitioner,     :     Case No. 3:12-cv-367

  - vs -                          District Judge Walter Herbert Rice
                                  Magistrate Judge Michael R. Merz

MICHELE MILLER, WARDEN,
  Belmont Correctional Institution,

                                  :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This is a habeas corpus case under 28 U.S.C. § 2254. The Magistrate Judge has recommended that the Petition be dismissed with prejudice (Report, Doc. No. 15). Slagle has filed Objections (Doc. No. 18) and Judge Rice has recommitted the case for reconsideration in light of the Objections (Order, Doc. No. 19).

The Objections do not proceed in a linear fashion. For example, Slagle places his objection to the Report's conclusion that the Second District decided his due process claim on the merits in the Objections after he begins discussing the "Other Issues" section of the Report. (See Objections, Doc. No. 18, PageID 1033.) For the convenience of the reviewing Judge, this Supplemental Report groups the Objections with that portion of the analysis to which they are relevant.

**First Objection: Magistrate Judge Disqualified by Prior Involvement with the Case**

Slagle's first objection is to the undersigned's involvement at all with this habeas corpus case.

Slagle first questions whether there is an order referring the case to the Magistrate Judge (Objections, Doc. No. 18, PageID 1024). Reference of all habeas corpus cases to the Magistrate Judges at all three locations of this Court has been done by general order of assignment and reference since before 1984 when this Magistrate Judge joined the Court. The current version is available on the Court's website at www.ohsd.uscourts.gov/generalorders.htm

Slagle notes that he was asked at the outset of the case if he would consent to plenary magistrate judge jurisdiction and he declined to do so because of this Magistrate Judge's prior involvement. Of course, by virtue of Article III of the Constitution, all federal litigants are entitled to adjudication of their cases by a District Judge, with or without any stated reason.

Slagle has known of this Magistrate Judge's assignment to the case since he was granted *in forma pauperis* status October 31, 2012, and he has never sought disqualification. S. D. Ohio Civ. R. 7.1.1(d) requires that facts which "may be any reason for a judicial officer of this Court to disqualify himself or herself, pursuant to 28 U.S.C. § 144 or § 455," are to be brought to the Court's attention "in writing as early as possible." If he believed disqualification was merited because of this Magistrate Judge's handling of his prior case, he should have raised the issue at the outset.

Of course, a judge's prior involvement in litigation with a particular party is almost never a basis for disqualification. The Supreme Court has written:

> The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias and prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for 'bias and prejudice' recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. ... [J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966). ... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States,* 510 U.S. 540 (1994); *see also Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002)(quoting the deep-seated favoritism or antagonism standard). The Court went on to hold:

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

*Id.* Since the decision in *Liteky, supra,* "federal courts have been uniform in holding that § 455(a) cannot be satisfied without proof of extrajudicial bias, except in the most egregious cases." Flamm, Judicial Disqualification 2d § 25.99, *citing In re Antar,* 71 F.3d 97 (3rd Cir. 1995).

Slagle complains that having this Magistrate Judge involved in the case "places him in the uncomfortable position of having to defend his initial decision that has led to all the trouble and confusion in this case. . . ." (Objections, Doc. No. 18, PageID 1024.)

The "initial decision" now complained of is this Magistrate Judge's Report and Recommendations in *Slagle v. Court of Common Pleas of Montgomery County*, Case No. 3:08-

3

cv-146, 2009 U.S. Dist. LEXIS 84012 (S.D. Ohio Aug. 3, 2009) ("*Slagle 1*"), in which the undersigned recommended that Slagle be granted a conditional writ of habeas corpus on his double jeopardy claim. *Slagle 1* at 18. Slagle had argued that the writ should be absolute. This Court granted him a certificate of appealability on that issue (*Slagle 1*, Doc. Nos. 45, 46), but the Sixth Circuit affirmed this Court's conditional writ. *Slagle v. Court of Common Pleas of Montgomery County,* 2010 U.S. App. LEXIS 27703 (6th Cir. Oct. 4, 2010).

After the conditional writ was affirmed, Slagle was convicted by Judge McGhee on the video record made of his trial before Judge Davis. Slagle appealed, but the conviction was affirmed. *State v. Slagle,* 2012 Ohio 1575, 2012 Ohio App. LEXIS 1384 (2nd Dist. Apr. 6, 2012)("*Slagle 2*"). The Ohio Supreme Court declined further review. *State v. Slagle*, 132 Ohio St. 3d 1485 (2012). His Ohio conviction final, Slagle returned to this Court in the instant case.

Slagle claims the initial decision "ignored the fact that a totally improper motion for mistrial had been ordered and granted in the Common Pleas Court. . . ." (Objections, Doc. No. 18, PageID 1024.) On the contrary, *Slagle 1* concluded "the Common Pleas decision to grant a mistrial is an objectively unreasonable application of clearly established Supreme Court law. . . ." *Slagle 1*, 2009 U.S. Dist. LEXIS 84012 at 18 (S.D. Ohio Aug. 3, 2009). It was on the basis of this conclusion that the writ was granted in *Slagle 1*.

As to making the writ conditional, the Magistrate Judge wrote in *Slagle 1*:

> Petitioner asserts that nothing short of a dismissal with prejudice will properly vindicate his interests, but the Court disagrees. There is still completely available the process which Petitioner agreed to in the first instance: decision on the video record already created completely vindicates Petitioner's interest in avoiding a second trial while protecting the ends of justice which would be thwarted without a verdict because of Judge Davis' untimely death.

*Id.* at 19-20. Slagle now objects that he never agreed to this procedure and chides the Magistrate

4

Judge for not citing any source to support that statement in *Slagle 1*. Actually there is a citation in the body of the *Slagle 1* Report:

> [O]n June 11, 2007, Defendant Slagle filed a Motion to Dismiss on Double Jeopardy grounds (RE No. 70), noting:
>
>> [t]here exists a complete audio/visual record of the trial. All of the written arguments have been submitted. Thus, any judge could review the videotape and be in the same position as Judge Davis was with regard to observing witness demeanor and making credibility determinations. This is no different from presenting a videotaped deposition of a witness to the trier of fact in any other trial, a practice which has been used extensively for many years.
>
> *Id*. at 2.

*Slagle 1* at 4-5. The Motion to Dismiss referenced in *Slagle 1* is now before this Court as part of the state court record (Doc. No. 11, Exhiibt 5). The Motion was signed on Slagle's behalf by Louis Hoffman, Dennis Lieberman, and Richard Hempfling, Slagle's attorneys at the time; Mr. Hempfling continued to represent the Petitioner in *Slagle 1*.

The matter raised in Slagle's first objection does not show any basis for disqualification of this judicial officer.

**Second Objection: Petitioner's Equal Protection Claim Is Not Procedurally Defaulted**

Slagle's First Ground for Relief asserts both equal protection and due process objections to the fact that he stands convicted on a video record of his trial before Judge Davis. The equal protection branch of the claim, as stated in the First Ground for Relief, is that Petitioner is "the only person ever convicted of a crime in the State of Ohio, by an admittedly improper and

5

therefor [sic] illegal process." (Motion to Amend, Doc. No. 6, PageID 96-97.)

The Warden raised a procedural default defense to the equal protection branch of this claim, asserting it was never fairly presented to the Ohio courts (Return of Writ, Doc. No. 12, PageID 984). Slagle responded by citing portions of the state court record which he believes fairly present the equal protection claim (Reply, Doc. No. 14, PageID 998-99). The Report canvassed those citations and concluded that Slagle had presented a Double Jeopardy claim but not an equal protection claim to the Ohio courts (Doc. No. 15, PageID 1006). It examined his appeal to the Ohio Supreme Court and found no mention of the Equal Protection Clause. *Id.* at 1007. The Report concluded that Slagle's equal protection claim was procedurally defaulted by failure to fairly present it to the Ohio courts. *Id.* at PageID 1008.

Slagle objects by complaining again at some length that the Common Pleas Court granted a mistrial (Objections, Doc. No. 18, PageID 1026-27). How that relates to fair presentation to the Ohio courts of an equal protection claim is opaque.[1]

As to his supposed fair presentation of the equal protection claim to the Ohio Supreme Court, Slagle fails to quote any place in his appeal to that court where equal protection is even mentioned, much less argued (See Objections, Doc. No. 18, PageID 1027). Despite again faulting the Report for employing a fair presentation standard which is argued to be "far more stringent than other Federal courts that have also stated standards for that doctrine," Slagle cites none of those other courts' decisions. *Id.* at PageID 1028.

The Report concluded the Ohio Supreme Court's decision to decline jurisdiction was not a decision on the merits (Report, Doc. No. 15, PageID 1007). Slagle objects that no citation was

---

[1] At this point in the Objections, Slagle claims his Fifteenth Amendment rights were violated (Objections, Doc. No. 18 PageID 1027). As a trained and experienced lawyer, Slagle surely knows the Fifteenth Amendment protects the right to vote regardless of race, color, or previous condition of servitude. It has nothing to say about criminal process.

6

given for that proposition (Objections, Doc. No. 18, PageID 1031). To the contrary, the Report cites Ohio S. Ct. Prac. R. 7.08(B) (Report, Doc. No. 15, PageID 1007). Additional authority is found in Ohio Rep. Op. R. 4.1 which reads "[t]he refusal of the Supreme Court to accept any case for review shall not be considered a statement of opinion as to the merits of the law stated by the trial or appellate court from which review is sought."

Aside from the procedural default analysis, the Report offers an alternative analysis of the merits of the equal protection claim and rejects them, concluding "the State did not do anything intentional to create the situation in which Slagle found himself, except making a video record, which it does for everyone." (Report, Doc. No. 15, PageID 1009.) Slagle objects that what the State did was to "wait[] until Judge Davis passed away." (Objections, Doc. No. 18, PageID 1032.) Of course it did. Prior to Judge Davis' death, there was no basis for any motion for mistrial – everyone expected Judge Davis to decide the case.

The gravamen of Slagle's Equal Protection Claim is that he is the only person ever convicted by an Ohio judge on a video record made before another judge. But that is the result of happenstance, not intentional discrimination. When Judge Davis died, the State improperly obtained an ex parte mistrial order. But when Slagle did get a chance to speak up, he asked for the result he eventually got – decision on the video record – instead of a retrial. It is certainly not the law that a defendant is entitled to a dismissal with prejudice when a judge, sitting as trier of fact, dies before reaching a decision.

**Due Process**

The second branch of Slagle First Ground for Relief claims he was deprived of due

process of law by the manner of his conviction. The Report recommends deciding this claim on the merits and finding that the decision of the Second District Court of Appeals affirming the conviction is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent (Report, Doc. 15, PageID 1010-14, relying on *Slagle 2*).

Slagle objects (Doc. No. 18, PageID 1033) that this decision was not on the merits, but instead found Slagle was collaterally estopped from relitigating the merits of this question because this Court had found there would be no due process violation in a decision on the video record.

Slagle is correct in his summary of Judge Fain's decision. The question whether that opinion amounts to a decision on the merits requires more analysis. Slagle's First Assignment of Error on appeal reads:

> The trial court's procedure in granting the prosecution's motion for mistrial denied the Defendant a fair trial and due process under the Fifth Amendment to the U.S. Constitution. The court should have conducted a hearing, conducting a Criminal Rule 25(B) analysis, which necessitates the application of Civil Rule 63. Failure to hold said hearing also denied the Defendant the opportunity to raise other options to avoid a mistrial, thus creating double jeopardy and necessitating dismissal of the indictment.

(Appellant's Merit Brief, Exhibit 30 in the State Court Record, Doc. No. 11-1, PageID 229.) Thus Slagle raised a due process and a double jeopardy claim. In deciding this Assignment of Error, the Second District disagreed with this Court's video record logic in *Slagle 1*, but concluded the Ohio doctrine of collateral estoppel precluded it from deciding the issue on the merits. *Slagle 2*, 2012 Ohio 1575, ¶¶ 41-48.

In circumstances such as this, the Sixth Circuit has held:

> *[Harrington v.]Richter* and *[Early v.] Packer* appear to require AEDPA deference where a federal issue has been raised but the

8

> state court has denied the claim with a discussion solely of state law. See *Childers v. Floyd,* 642 F.3d 953, 968-69 (11th Cir. 2011). The Supreme Court has recently granted certiorari in a case that may definitively resolve this issue. See *Cavazos v. Williams*, 132 S. Ct. 1088, 181 L. Ed. 2d 806 (2012).

*Moreland v. Bradshaw*, 699 F. 3d 908, 931 (6th Cir. 2012). Slagle raised his federal due process claim[2] in his First Assignment of Error, along with state law issues. The Second District discussed only state law in making its decision, but the decision is still entitled to deference.

If the Second District's decision were not entitled to deference, this Court should still not grant relief. At least implicitly this Court found no due process violation in including a decision on the video record as the alternative to an unconditional writ and the Sixth Circuit affirmed that decision. Slagle cites no authority for the proposition that it is a deprivation of due process to permit a verdict on a video record.

**Third Objection:  Defendant's Wrongful Conduct a Breach of Contract, Not a Crime**

Slagle's Second Ground for Relief reads as follows:

> **Ground Two:** Petitioner's right to due process of law and the equal protection thereof was denied by a finding of guilt of theft based solely on a contractual agreement in violation of Ohio law.
>
> **Supporting Facts:** From the very beginning, Petitioner has maintained that this entire situation is a civil and not a criminal matter.

(Petition, Doc. No. 1; Motion to Amend, Doc. No. 6.)

The Report noted that Slagle had raised this claim as his Second Assignment of Error on direct appeal and quoted the Second District's resolution of it (Report, Doc. No. 15, PageID

---

[2] It is presumably on this basis that the State did not claim procedural default of the due process branch of the First Ground for Relief.

9

1014-16).  The Report further noted that "[t]o the extent this Ground raises a question of Ohio law – whether the facts proved are sufficient to constitute a crime under Ohio law – it does not state a claim upon which relief can be granted because that is question of Ohio, not federal constitutional, law." *Id.* at PageID 1016.

Slagle's Objections focus on critiquing the court of appeals' findings of fact (Objections, Doc. No. 18, PageID 1028-30.[3])  He writes:

> That leaves pages [paragraphs] 9, 12, and 13 to discuss. In order to do so, one should step away from the court of appeals rhetoric as quoted by the Magistrate and ask what is the basis for those claimed facts, upon examination it can quickly be determined that the sole and only basis for a supposed "crime" is a contract. That is to say, absent a contract between the Petitioner and PS&E, there would be no basis to allege anything by PS&E.
>
> As this Court is undoubtedly aware, in Ohio, the Ohio Supreme Court has made it abundantly clear that:
>
> 1. Law firms do not have or even "own" clients, only individual attorneys have clients.
>
> 2. Law firms do not earn fees, only individual attorneys earn fees.
>
> 3. Therefore, if fees were earned by Petitioner, or in fact anyone else the only basis for remitting same to a law firm would be a contract, at most, there was a breach of contract and nothing more.
>
> Moreover, Ohio's theft statute requires that the "victim" be the "owner" of what was allegedly stolen.
>
> While it is palpable a breach of contract may have occurred there could be no theft as the law firm did not own the fees. Having a contract saying it owns the fees does not make it the owner. Petitioner owned the fees subject to a contract right of others.

---

[3] Slagle refers to various "pages" of the court of appeals' opinion.  Actually, the findings are found in numbered paragraphs of that opinion, which are shown in the quotation of the opinion in the Report.  Ohio Rep. Op. R. 3.5(b) requires that court of appeals opinions published by posting on the Ohio Supreme Court's website be divided into numbered paragraphs.

> The Ohio courts never could seem to grasp that concept, effectively thereby making a heretofore unheard of law that a breach of contract in Ohio, is now a crime.

(Objections, Doc. No. 18, PageID 1028-29.)

While Slagle dismissively calls the opinion "rhetoric," he does not quarrel with the findings of fact made by the court of appeals which is binding on a habeas court unless it is demonstrated that the findings are an unreasonable determination based on the evidence presented. 28 U.S.C. § 2254(d)(2). Slagle has attempted no such demonstration. Despite his assertion of what the Ohio Supreme Court has supposedly made "abundantly clear," Slagle cites no case authority at all. To the extent Slagle is claiming the court of appeals' decision is "bad" Ohio law, a habeas court is bound by determinations of state law made by the state courts, even in the case in suit. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598, (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36, (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

There is an equal protection branch to Slagle's Second Ground for Relief as well. The Report concluded:

> To the extent Slagle attempts to make an equal protection claim in Ground Two, it is procedurally defaulted on the same basis as the equal protection prong of the First Ground. And in any event it is without merit: Slagle has not even argued that there is any other person who, upon similar facts, was permitted by the Montgomery County Prosecutor, the relevant state actor in this case, to have the matter resolved civilly.

(Report, Doc. No. 15, PageID 1016-1017.) Slagle offers no objection to the procedural default

11

conclusion.  As to the merits conclusion, he objects that "there are no others in recorded Ohio history charged with a theft for a breach of contract, that numerous searches by numerous attorneys could locate."  (Objections, Doc. No. 18, PageID 1033.)  Slagle gives no source that anyone can check for this assertion.  But the Magistrate Judge can offer an example which happens literally hundreds of times a day in Ohio:  A vendor displays a piece of merchandise in his store.  By displaying it he is offering it for sale, i.e., offering to enter into a contract.  A customer picks it up from the shelf and conceals it on his or her person while leaving the store.  Certainly the customer has committed a tort or a breach of the implied contract and could be sued civilly.  But the customer can surely also be prosecuted for theft and hundreds of such crimes occur daily in Ohio.

The burden of proof of an equal protection violation is on the party asserting that it happened.  Reconsidering the Report in light of the Objections, it remains true that Slagle has not pointed to any other person who, on similar (or legally analogous) facts has been permitted by the Montgomery County Prosecutor to resolve the matter civilly.  It is not a matter of proving a negative as the Objections suggest.  It is a matter of proving intentional discrimination by showing that a similarly situated person received better treatment from the Montgomery County Prosecutor.

**Other Issues**

In his Reply, Slagle raised a number of issues about the case which do not come within the scope of his pled Grounds for Relief.  The Report dealt with each of these (Doc. No. 15, PageID 1017-18).  Slagle makes six pages of objections to that section of the Report (Objections,

Doc. No. 1 8, PageID 1030-36). His objections are considered here seriatim.

Slagle argued that the successor judge, Judge Frances McGee,[4] should have known it was "illegal" to convict him on a video record, the method he had argued for in lieu of a mistrial and that this Court had approved as an alternative to an absolute writ. The Report recommends rejecting this issue because the only Ohio authority for the illegality of the video record procedure is *Slagle 2*, the Second District's opinion on appeal from Judge McGee's decision.

Slagle objects that Judge McGee could have researched, found there was no precedent, and just dismiss the charges against him with prejudice (Objections, Doc. No. 18, PageID 1031). This argument avoids the logic of the underlying Double Jeopardy matter. If there was no way for a successor judge to decide the case, then there certainly was a manifest necessity for a mistrial because the original finder of fact could not decide the case. It was Slagle who argued, through counsel, that there was no manifest necessity for a mistrial and that Judge John Kessler, as the original successor judge, could decide the case on the video record.

Slagle argued that Judge McGee as a former prosecutor should have recused herself and the Report noted this amounted to arguing former prosecutors are *per se* disqualified (Report, Doc. No. 15, PageID 1017-1018). Slagle objects that there are reasons particular to this case why Judge McGee should have recused herself: "Because she worked with the trial attorney for the state [and] clearly and undoubtedly had opinions of it [the case] before assuming the bench." (Objections, Doc. No. 18, PageID 1031.) The record is bereft of any request for recusal of Judge McGee on this basis.

Slagle suggested that if this Court found any of his issues unexhausted, it should stay the proceedings so that he could file an application for reopening his appeal under Ohio R. App. P. 26(B). The Report noted that the time limit for such an application is sixty days after judgment,

---

[4] Judge McGee's name is misspelled in the Report as "McGhee" for which the Magistrate Judge apologizes.

13

a time which has long since expired.  Slagle notes in his Objections that a court of appeals can extended that time for good cause (Objections, Doc. No.18, PageID 1034).  While that is correct, Slagle has neither filed for delayed reopening nor suggested what good cause he would offer.  Finally, however, the Magistrate Judge has found none of his claims unexhausted; rather, they are in part procedurally defaulted.

**Conclusion**

Having reviewed the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

August 14, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).